**Janice DeYOUNG, together with all others similarly situated, Plaintiffs,**

v.

**The CITY OF NEW YORK and Albert Rosario, Defendants.**

**No. 84 Civ. 5918 (WCC).**

United States District Court, S.D. New York.

April 11, 1985.

Eugene B. Nathanson, New York City, for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel for the City of New York, New York City, for defendants; Caryn Hirshleifer, Beth G. Schwartz, Asst. Corp. Counsel, New York City, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff Janice DeYoung ("DeYoung"), a disgruntled victim of New York City's parking enforcement authorities, seeks to vindicate a variety of constitutional rights allegedly violated by the City in connection with its improper towing and impounding of her car. Pursuant to 42 U.S.C. § 1983,[1] she has sued the City and Albert Rosario, the traffic enforcement officer who ticketed her car, on behalf of herself and all others similarly situated. She alleges, first, that she sustained monetary damages

---

1. Plaintiff's complaint indicates that this action arises under New York law as well as 42 U.S.C. § 1983. The nature of the state law claims is unclear, although plaintiff does allege in Paragraph 22 that she suffered "severe mental and emotional distress" as a result of defendants' conduct. Apparently, plaintiff had rented the vehicle in question to attend her grandmother's wake in New Jersey. Compl. at ¶ 21. The sudden unavailability of her vehicle allegedly made it impossible for her to arrive on time.

and emotional injuries after Rosario either intentionally or negligently ticketed her legally parked car; the car was subsequently towed. According to plaintiff, this "seizure" amounted to a violation of her Fourth Amendment and due process rights. Moreover, DeYoung asserts that the City's policies with respect to parking violations are unconstitutional in that prior to any adjudication of the parking violation, they condition release of an impounded vehicle upon payment of all towing and storage fees, and they do not permit the alleged parking violator to post a bond in lieu of full payment. Plaintiff also challenges the constitutionality of the City's "policy of not advising plaintiffs who are found not guilty of parking violations that they have an absolute right to recover their towing and storage charges," Compl. at ¶ 26, and of requiring individuals to execute a form containing a waiver of liability claims against the City before recovering those charges.

The matter is now before the Court on defendants' motion for summary judgment. Defendants assert: (1) that the complaint states no cause of action under the Fourth Amendment; (2) that DeYoung was accorded all the process she was due under the Fourteenth Amendment; (3) that the City may constitutionally require payment of charges prior to an adjudication of guilt and need not accept a bond in lieu of payment; (4) that there is no policy of not advising individuals of their right to a refund and that, in any event, plaintiff would lack standing to challenge any such policy; and (5) that the City may constitutionally require plaintiff to execute the release in question before obtaining a refund. For the reasons set forth below, defendants' motion for summary judgment is granted with respect to the due process claims. The Court reserves judgment on the Fourth Amendment claim, however, pending additional briefing.

*Background*

For purposes of this motion, the following undisputed facts are relevant. On May 20, 1983, Rosario issued a summons to DeYoung for parking a rented car illegally on a Manhattan street. The car was towed and impounded. The next day, plaintiff redeemed the vehicle by paying $80.00 in towing and storage fees. In accordance with City policy, parking authorities would not permit her to post a bond for a lesser amount in lieu of payment.

DeYoung contested the illegal parking charge at a hearing on July 27, 1983. After testifying and presenting evidence, she was found not guilty of the offense. Several weeks later, she telephoned the New York City Parking Violations Bureau to inquire about recovering the towing and storage charges. The Bureau advised her that she could seek a refund and sent her a "Request for Refund" form. She did not file for a refund, however, because the form contained a waiver provision which she construed as foreclosing any future claim for damages resulting from the improper towing. DeYoung has not yet filed the form and thus has not claimed her refund.

*Discussion*

The parties agree that the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) effectively foreclose aggrieved persons from filing § 1983 due process claims in order to remedy negligent and intentional deprivations of property by the State, where the acts complained of are random or unauthorized and where there are adequate post-deprivation state tort remedies. These holdings are based upon the Court's conclusion that "in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916, *Hudson*, 104 S.Ct. at 3203. Defendants argue that *Parratt* and *Hudson* dispose of any constitutional claim based upon the initial seizure of plaintiff's car.

Plaintiff, on the other hand, asserts that these authorities are inapposite for two reasons: (1) Rosario's act of ticketing the car was neither random nor unauthorized, but was, instead, accomplished "pursuant

to an established state procedure, codified in the New York State Vehicle and Traffic law and carried out through the ordinary procedures of the Department of Transportation and the Parking Violations Bureau"; and (2) the towing amounted to a violation of plaintiff's substantive Fourth Amendment rights, which are not subject to the restrictions placed on procedural due process claims by the Supreme Court in *Parratt* and *Hudson.* Pl.Mem. at p. 6.

■ Those constitutional claims arising out of the initial seizure of DeYoung's car rest on her contention that the vehicle was, in fact, legally parked. While plaintiff suggests that the car was ticketed and towed "pursuant to established state procedure," she does not actually contend that the City has a policy of authorizing or encouraging the towing of legally parked cars. Regardless of whether Rosario negligently or intentionally ticketed DeYoung's car, his activity resulted in a random, unauthorized deprivation of plaintiff's property, which is actionable under state law. Under these circumstances, the holdings of *Parratt* and *Hudson* mandate summary judgment in defendants' favor on this due process claim.[2]

With respect to plaintiff's second contention, I note the parties agree that *Parratt* and *Hudson* do not apply to charges that state officials have violated substantive constitutional rights; they disagree as to whether plaintiff's complaint states a Fourth Amendment claim. Defendants assert, first, that the complaint fails to mention the Fourth Amendment as a basis for liability, and that the Court should not permit her to change the nature of her claim so as to avoid summary judgment. Defendants are correct that the complaint does not refer to the Fourth Amendment; it does mention the Fourteenth Amendment, however, and because the latter provision secures Fourth Amendment rights against state intrusion, the Court will not foreclose plaintiff from pursuing this claim.

The City argues, alternatively, that the Fourth Amendment protects only against governmental intrusions which contravene an individual's reasonable expectation of privacy, and that plaintiff had no such expectation here because she parked her car on a public street. Def.Reply Mem. at 56. While the City's argument carries some appeal, I am not convinced that the Fourth Amendment claim can be disposed of so easily. The allegations of the complaint amount to an assertion that the vehicle was ticketed and subsequently "seized" without probable cause. In order to grant summary judgment on this claim, I would have to conclude that state officials who seize property without a warrant and without probable cause violate no rights secured by the Fourth Amendment if that property is located in public view. I am unprepared to make such a ruling on the basis of the authorities thus far presented. The Court will therefore reserve judgment on defendants' motion insofar as it seeks to defeat a Fourth Amendment claim, pending further submissions on these limited questions: (1) whether Rosario had probable cause to ticket plaintiff's car; and (2) whether, assuming there was no probable cause, the public location of the vehicle defeated any Fourth Amendment right DeYoung might otherwise have possessed.

Plaintiff next attacks the City's requirement that an individual seeking to redeem his vehicle before any adjudication of the merits of the parking violation pay towing and storage charges in full. Towing and storage charges are refundable upon a determination that the vehicle was improperly ticketed, but to the extent there is any delay in the hearing process, the individual is temporarily deprived of either his car or his money.

---

2. Plaintiff concedes that she was not entitled to a pre-deprivation hearing or notice. She acknowledges that she was only entitled to "a determination by a traffic enforcement agent that her car was illegally parked and subject to towing under the law." Pl.Mem. at 4. Although she complains that such a determination was not made, the summons issued by Rosario is evidence to the contrary. Rosario may have been wrong, but the provision of due process does not require a correct outcome.

DeYoung acknowledges the City's legitimate need to clear the streets of illegally parked cars, and its need to do so without a prior hearing or notice. She argues, however, that once the offending vehicles have been removed to locations of relative safety, the government's only remaining interest is in collecting the fees. In plaintiff's view, this interest is insufficiently great to justify even a temporary deprivation without any opportunity to be heard. DeYoung regards the present arrangement as "manifestly defective," but concedes that it might be saved from constitutional insufficiency if there were some provision by which an alleged parking violator could post bond in a lesser amount in lieu of full payment.

Plaintiff finds support for her position in *Breath v. Cronvich*, 729 F.2d 1006 (5th Cir.1984), wherein the Court of Appeals for the Fifth Circuit was faced with a due process challenge to towing procedures in Jefferson Parish, Louisiana. The court observed that a car owner who chooses to contest a parking violation is granted a hearing, and that in the meantime, he can redeem his vehicle without paying any fees by obtaining an appearance bond. 729 F.2d at 1101. The court then held:

> This bond procedure, combined with the hearing on the merits of the ticket, affords adequate due process protection. The procedure protects the government's interest in retaining security for the owner's payment of towing and storage fees, and also protects the vehicle owner's interest in the uninterrupted use of his automobile.

*Id.* Plaintiff concludes, on the strength of *Breath*, that if recovery of a vehicle is conditioned on full payment of towing and storage charges, the procedure violates due process.

Defendants, on the other hand, look to *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir.1982) for support. In *Goichman*, the Court of Appeals for the Ninth Circuit rebuffed a constitutional challenge to Los Angeles towing procedures, which provide for a hearing within forty-eight hours but not for the posting of a bond in lieu of full storage and towing charge payment. After recognizing that due process is "a flexible concept and is procedural protections will vary depending on the particular deprivation involved," the court weighed the competing governmental and private interests, observing:

> Were we to require immediate release on demand, as proposed by Goichman, we would jeopardize the government's "considerable interest in imposing the cost of removal upon the vehicle owner and retaining possession of the vehicle as security for payment[.]" ... Release-on-demand effectively requires the city either to provide on-the-spot hearings or to secure the costs of towage itself. Either option would prove burdensome and expensive.

682 F.2d at 1324 (citation omitted). The court held, in light of these considerations, that a hearing within forty-eight hours satisfied the requirements of due process. *Id.* at 1325.

With respect to Goichman's additional argument that due process required the city to establish a procedure under which the vehicle owner could redeem his car by posting a bond in an amount less than the towing and storage charges, the court concluded that

> the government's considerable interest in retaining possession of the vehicle as security for the owner's payment of towing and storage charges outweighs the private interests that would be served by the procedure. Because the substitute procedure Goichman proposes would not ensure that the owner of a lawfully towed vehicle pays the entire amount of these charges, the fiscal burden it would create for the city is too great.

682 F.2d at 1325.

■ Having reviewed these authorities, as well as the affidavit and documentary exhibit submitted by the parties, I am satisfied that New York City's provision for payment of charges prior to any adjudication of guilt is constitutional, and that the City need not accept a bond in any amount

less than those charges. According to the uncontested sworn statements of Samuel Morris, Chief Administrative Law Judge of the New York City Parking Violations Bureau,

> [a]n individual can challenge the propriety of a parking violations [sic] summons either by mail or by personal appearance. A challenge by mail is heard by a judge in an ex parte proceeding. A challenge in person can be effectuated by appointment or *immediately on a walk in basis* at any of the Parking Violations Bureau offices on any day during the week except Saturday and Sunday and on any evening during the week except Friday, Saturday or Sunday.

Morris Aff. at ¶ 2 (emphasis added). Defendants' Exhibit A, an information pamphlet issued by the Parking Violations Bureau, indicates that day sessions are held from 9:00 A.M. to 4:00 P.M., and that evening sessions are held from 6:00 P.M. to 8:00 P.M. Thus, it is apparent that under the procedures now in effect, an individual whose car has been towed can, in many instances, proceed immediately to one of the Bureau's offices for a hearing.

Even under the worst of circumstances, an aggrieved individual would be deprived of either his car or his money from Friday at 4:00 P.M. to Monday at 9:00 A.M. Although such a delay would undoubtedly cause some inconvenience, not all temporary deprivations violate the Constitution. Due process guarantees "an opportunity to be heard at a meaningful time," *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976), and I do not believe that a delay of this length deprives vehicle owners of that right.

I am also satisfied that New York City's refusal to accept a bond in lieu of full payment of towing and storage charges is constitutionally sound. As the Ninth Circuit noted, the bond procedure proposed by DeYoung does not adequately ensure that the owners of lawfully towed vehicles will ultimately pay the full amount of these charges. Although defendants have produced no statistical evidence in this respect,

there can be no question but that forcing the City either to absorb the difference between the bond and the charges, or to collect the difference after the car has been released, would impose substantial fiscal and administrative burdens. The law of Jefferson Parish, Louisiana notwithstanding, I conclude that plaintiff's due process rights were not violated by New York City's refusal to allow her to post a bond in order to obtain the immediate release of her car, and that summary judgment should be entered in favor of defendants on this claim.

DeYoung's attack on the City's policy of "not advising alleged traffic offenders of their absolute right to recover towing and storage charges on a finding of not guilty at a Parking Violations Bureau hearing," Compl. at ¶ 26, is also appropriate for summary disposition. Defendants deny that there is any such policy or practice. According to Chief Administrative Law Judge Samuel Morris,

> it is the policy of the Parking Violations Bureau to inform all individuals, at the outset of the hearing, that if the hearing results in a dismissal of the traffic summons, the individual is entitled to a refund of all towing and storage charges. "Request for Refund" forms are always, to the best of my knowledge, available at the various Parking Violations Bureau offices and it is the policy of the Parking Violations Bureau to advise all individuals who appear in person for a hearing of the availability of the "Request for Refund" forms.

Morris Aff. at ¶ 4. In opposition, plaintiff has submitted an affidavit stating that *she* was not informed of her right to a refund when she appeared at her hearing, and also an informational pamphlet entitled "How to Deal With Your Summons," which is issued by the Parking Violations Bureau to summons recipients, and which does not advise the reader of his right to recover towing and storage fees upon a finding of not guilty.

█ Neither the Bureau's pamphlet nor DeYoung's affidavit raises any genuine is-

sue with respect to the existence of the policy described in the Morris affidavit. While the City might well have placed in its pamphlet some reference to the car-owner's right to a refund, the absence of such a reference from this particular document in no way reflects upon Morris's statement that the Bureau has a policy of providing this information at the outset of its hearings. Moreover, DeYoung's statement suggests, at best, that the hearing examiner who adjudicated her summons failed to follow Bureau policy in her case. To the extent that such an error by a City agent is actionable at all, I see no reason why plaintiff should not be required to pursue state tort remedies under the doctrine set forth by the Supreme Court in *Parratt* and *Hudson*.

I turn, finally, to plaintiff's contention that the City violates due process by conditioning any refund of towing and storage fees upon the execution of a release which plaintiff construes as waiving any and all claims against the City arising out of an improper towing. Because I agree with defendants that plaintiff has misconstrued the release provision, I need not reach the question of whether due process would be violated by the kind of release described by plaintiff.

The "Request for Refund" form, attached as an exhibit to plaintiff's complaint, directs the individual requesting a refund to check one of the listed claim categories, and to submit documentation to support the claim. Among the categories listed are "towaway payment," "duplicate payment," and "overpayment of summons." At the bottom of the form, above a signature line, is the following statement:

> It is understood and agreed by the applicant that receipt of the payment herein provided for on behalf of said applicant or anyone claiming by or through him shall constitute and operate as a release to the City of New York *from any and all claims of and liability to the applicant for anything arising out of or relating to the claim set forth herein* and that all supporting documents sub-

mitted herewith shall become the property of the City of New York.

(emphasis supplied). It is this provision which is in question here.

 Defendant argues, and I agree, that when properly placed in context, the reference to a release of "claims arising out of or relating to the claim set forth herein" can only fairly be read to effect a waiver of claims to the towing and storage charges which are the subject of the refund request. Thus, the signed form "acts as a receipt." Def. Reply Mem. at 10.

Plaintiff urges that her construction of the release must be correct because it is "preposterous to suppose that, on receiving a check for $80 in refund of towing and storage charges, plaintiff would subsequently file an additional claim for that same $80, and even more preposterous to suppose that the City would need a signed release to prevent plaintiff from successfully pressing that second claim." Pl.Mem. at 9. I do not find these suppositions "preposterous" at all. Moreover, plaintiff's argument that "the claim set forth herein" refers to "the claim that plaintiff's automobile was towed and that she was then found not guilty at a hearing," *id.*, is nothing more than a strained attempt to construct a constitutional deprivation out of a common administrative requirement. Accordingly, defendants' motion for summary judgment is granted on the waiver claim.

In summary, judgment is to be entered in favor of defendants on all claims save that which purports to allege a violation of plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures. Defendants are directed to submit additional materials in support of their motion for summary judgment on that claim on or before April 29, 1985. Plaintiff will have until May 13, 1985 to respond, and defendant may submit reply papers by May 20, 1985.

SO ORDERED.